## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED CENTRAL BANK, as assignee of Mutual Bank, | ) ) ) | **FILED** |
| Plaintiff, | ) ) | **10/7/2013** |
| v. | ) ) | THOMAS G. BRUTON |
| SAAD SINDHU, | ) ) | CLERK, U.S. DISTRICT COURT |
| Defendant, | ) ) | |
| and | ) ) | Case No.:10 cv 2878 |
| UNITED CENTRAL BANK, as assignee Of Mutual Bank, | ) ) ) | |
| Judgment-Creditor-Plaintiff, | ) ) | |
| v. | ) ) | |
| SAAD SINDHU , Judgment-Debtor, and SADIA SINDHU, Third-Party Defendant. | ) ) ) ) ) | |

## COMPLAINT OF UNITED CENTRAL BANK, JUDGMENT-CREDITOR
## FOR FRAUDULENT TRANSFER OF ASSETS AGAINST
## JUDGMENT DEBTOR, TRANSFEROR, SAAD SINDHU
## AND TRANSFEREE, SADIA SINDHU

**NOW COMES THE JUDGMENT-CREDITOR**, United Central Bank ("UCB"), by its

attorneys, Daniel V. Kinsella and Michael D. Lee, Schuyler, Roche & Crisham, P.C., Chicago,

Illinois, and for its complaint against the Judgment-Debtor-Defendant, Saad Sindhu, and the

Transferee-Third-Party Defendant, Sadia Sindhu, states as follows:

853951v2

## PARTIES

1.     This is a Supplementary Proceeding filed pursuant to Federal Rule of Civil Procedure Rule 69(a)(1), incorporating Illinois Code of Civil Procedure Section 2-1402. This Court has jurisdiction to enforce its Judgment against the Judgment-Debtor, Saad Sindhu, dated August 25, 2010. This Court also has jurisdiction due to diversity of citizenship pursuant to 28 U.S.C. §1332.

2.     Plaintiff is United Central Bank ("UCB"), a Texas banking corporation. UCB has its principal place of business in the State of Texas. It is a citizen of the State of Texas. UCB is the Judgment-Creditor in the above-captioned matter.

3.     Saad Sindhu ("Saad") is the Judgment Debtor, herein.

4.     Sadia Sindhu ("Sadia") is a citizen of the County of Cook, State of Illinois, and is the transferee of property conveyed to her in violation of the Illinois Uniform Fraudulent Transfers Act, 740 ILCS 160/5 *et seq.* Sadia is also a party served with a third-party Citation to Discover Assets issued October 12, 2012 and personally served October 22, 2012, 2012. (A copy of the Sadia Citation is attached as Ex. A.) This Court has personal jurisdiction over Sadia Sindhu.

## FACTUAL BACKGROUND

5.     UCB obtained a judgment against Saad in this case on August 25, 2010.

6.     On October 6, 2010 UCB issued a Citation to Discover Assets directed to Saad. (A copy of the Saad Citation is attached as Ex. B hereto.) By its terms, the Citation prohibited him from making or allowing any transfer of any non-exempt property. A second, identical, Citation was issued on December 3, 2010.

7.     The Saad Citation commanded Saad to produce certain documents on or before October 25, 2010.  Under paragraph 11 of the Document Request, the Citation required that Saad produce to UCB "All documents that relate to, pertain to, refer to or reflect any ownership in, purchase of, or sale of tangible and intangible asset in which You [Saad] have or had an interest during [the time period from January 1, 2007 to the date of the Citation]."  Under paragraph 15 of the Document Request, the Citation required that Saad produce "Trust agreements, or in the alternative a list of trusts, with respect to any trust in which You [Saad] hold any beneficial interest (whether vested, contingent or future), and all documents that relate to or reflect any assignment of any trust interest."  Further, under paragraph 17 of the Document Request, the Citation required that Saad produce "All documents not requested above that relate to Your [Saad's] assets" for the time period from January 1, 2007 to the date of the Citation.

8.     Saad failed to produce the requested documents in a timely manner.

9.     The Citation served on Sadia required production of documents related to all accounts in which Saad had an interest in the previous 10 years.  (Sadia Citation, Ex. A, Document Request 1.)

10.     On March 30, 2011 UCB issued a Citation to Discover Assets directed to Devon Bank.  (A copy of the Devon Bank Citation is attached hereto as Exhibit C.)  Devon Bank ("Devon") is an Illinois banking and trust company which has a principal place of business in the City of Chicago, County of Cook, State of Illinois.

11.     By its terms the Citation prohibited Devon Bank from making or allowing any transfer of other disposition of any property belonging to the Judgment-Debtor.

12.     The Devon Bank Citation also sought production of documents and communications concerning Saad and information concerning property due Saad for the time period from January 1, 2001 to the date of the Citation.  (Requests 1 and 3)

13.     The Citation specifically provided that they "are continuing and, to the extent that [Devon Bank's] Responses hereto should be supplemented, enlarged, diminished or otherwise modified by information or Documents acquired by [Devon Bank] or any other person acting on [Devon Bank's] behalf subsequent to the filing of [Devon Bank's] initial Responses, [Devon Bank is] requested to serve promptly thereafter supplemental Responses reflecting such changes."  (Instructions ¶ A.)

14.     Pursuant to the Citation Devon Bank did produce some documents concerning property interests of Saad.  Among those were documents relating to a Land Trust held by Devon Bank as trustee under Trust Agreement number 7056, dated April 28, 2005.  ("LT 7056")  LT 7056 was the legal title holder of a parcel of real estate located at 24575 North Highway 59, Barrington, Illinois.  (The Trust Agreement is attached as Ex. D hereto.)

15.     The documents produced by Devon Bank did not include any record of the beneficial owner of LT 7056.  The documents did not include any record of any person, firm or corporation which had the power of direction over LT 7056.  The documents did not include any assignment or transfer of the beneficial interest in LT 7056.  The documents did not include the Trust Agreement numbered 7056 and dated April 28, 2005.  The documents did not include the mortgages on the property or any releases of any mortgages on the property, including the release dated March 4, 2011.

## TESTIMONY OF SAAD SINDHU

16.     Following numerous delays and extensions UCB obtained the testimony of Saad on November 14, 2012, which was first requested in the Citation to Discover Assets.  In his testimony Saad stated that he did not have any records requested.  (Saad Tr. at 11, excerpt is attached as Ex. E.)  Certain records had been produced on Saad's behalf, but none of the records produced related to LT 7056 or to the property at 24575 North Highway 59, Barrington, Illinois.

17.     Saad was asked about the property and stated that he and his mother used to own it.  When he was asked what happened to it he testified; "It was foreclosed.  It was – I believe we gave a deed in lieu to" First Midwest Bank in the early part of 2010.  (Saad Tr. at 22-23, excerpt is attached as Ex. F.)  He later testified that he believed in 2010 that they owed more on the house than it was worth, it was "upside down".  (Saad Dep. at 179, excerpt is attached as Ex. G.)

## TRANSACTIONS CONCERNING SAAD SINDHU'S INTEREST
## IN LT 7056

18.     The beneficial interest in LT7056 was owned 50% by Shahida Sindhu (Saad's mother) and 50% by Saad.  On January 3, 2011, Shahida transferred her 50% interest to Saad.  The 100% beneficial interest in LT 7056 was transferred from Saad to the Defendant Sadia Sindhu.  (Copies of the Assignments of Beneficial Interest as lodged with the Trustee are attached as Group Ex. H.)  On March 22, 2011 the mortgage on the property was released and legal title to the property was owned free and clear by LT 7056.  (A copy of the Release of Mortgage is attached Ex. I.)  Because the beneficial interest in LT 7056 was owned by Sadia, Sadia was the owner of the property, free and clear of all mortgage interests.

19.     Thus, at the time of Saad's testimony, November 14, 2012, Sadia owned the property free and clear of all mortgage interests.

20.     On August 13, 2013 Devon Bank as Trustee under LT 7056 executed a first mortgage of the real estate to Financial Freedom Loans of Carlsbad, California to secure a loan of $1,100,000 to the owner of the beneficial interest of LT 7056.

21.     As a result of the August, 2013 mortgage $950,000 of the proceeds were distributed to an Ohio corporation known as Sabir Properties, Inc.  The balance, about $150,000, was distributed to Sadia.  (A copy of the Letter of Direction, signed by Sadia and filed with Devon Bank and a copy of the confirmation of Devon Bank as trustee are attached as Group Ex. J.)

22.     Contrary to Saad's testimony, he had transferred the beneficial interest in the property to Sadia, his sister, after the judgment and prior to his testimony.  The first mortgage to Bayview Loan Servicing, LLC, the successor to First Midwest Bank, had been paid in full, satisfied and released after the judgment and prior to his testimony.  No deed in lieu of foreclosure to First Midwest Bank appears on the record.  The record of the August, 2013 mortgage establishes that the value of the property was in excess of $1.1 million and, given the mortgage policies of the mortgagee, in excess of $1.7 million.

23.     Saad received no consideration from Sadia for the transfer of the beneficial interest in LT 7056.

24.     Sadia is Saad's sister and is therefore a relative and an insider.

25.     At the time of the transfer Saad was insolvent.

## COUNT I

### ACTION AGAINST SAAD AND SADIA SINDHU
### FOR FRAUDULENT TRANSFER
### IN VIOLATION OF SECTION 5 OF THE ILLINOIS
### FRAUDULENT TRANSFER ACT

26.     Section 5(a) of the Illinois Uniform Fraudulent Transfer Act (the "Act") provides that a transfer made by a debtor "is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made ..., if the debtor made the transfer ...: (1) with actual intent to hinder, delay, or defraud any creditor of the debtor." 740 ILCS 160/5(a)(1)

27.     In determining whether the Judgment Debtor, Saad Sindhu, acted with actual intent Section 5(b) of the Act provides that this Court should consider the following factors:

(1)     [Whether] the transfer ... was to an outsider;

(2)     [Whether] the debtor retained possession or control of the property transferred after the transfer;

(3)     [Whether] the transfer ... was disclosed or concealed;

(4)     [Whether] before the transfer was made ..., the debtor had been sued ...;

(5)     [Whether] the transfer was of substantially all of the debtor's assets;

(6)     [Whether] the debtor absconded;

(7)     [Whether] the debtor removed or concealed assets;

(8)     [Whether] the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred ...;

(9)     [Whether] the debtor was insolvent or became insolvent shortly after the transfer was made ...:

(10)    [Whether] the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11)     [Whether] the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

740 ILCS 160/5(b)(1) – (11)

28.     Under the factors set forth in Section 5(b) Saad acted with actual intent to hinder, delay or defraud the Judgment-Creditor, UCB, in transferring the beneficial interest in LT 7506 to his sister, Sadia, between October, 2010 and April, 2011.

29.     The transfer was made to an insider, his sister, as defined by Section 2(g)(1)(A) of the Act. 740 ILCS 160/2(g)(1)(A). The Act specifically defines an insider as a "relative of the debtor".

30.     The transfer of the beneficial interest was concealed by the Judgment Debtor, even when asked about the status of the property while he was under oath. The transfer of the beneficial interest to Sadia was never disclosed. Under oath Saad stated that he and his mother owned the property. Further, under oath Saad stated that the property had been conveyed to First Midwest Bank by a deed in lieu of foreclosure and that the value of the property was less than the amount of the mortgage. In fact, at the time of his testimony, the first mortgage of First Midwest Bank had been assigned to Bayview Loan Servicing and the mortgage to Bayview had been fully paid and released. Thus, at the time of Saad's testimony, his sister, Sadia, owned the property free and clear of the mortgage.

31.     The transfer of the beneficial interest occurred after the suit by the Judgment Creditor, and, indeed, after the judgment had been obtained by the Judgment Creditor.

32.     At the time of the transfer the interest of the Judgment Debtor in LT 7056 was the only asset with any value. Thus, the transfer was a transfer of substantially all of the Judgment Debtor's assets.

33.     The Judgment Debtor received no consideration in exchange for his transfer of the beneficial interest in LT 7056. The value of the property was not less than $1.1 million as that was the amount of the value of the first mortgage placed on the property by Financial Freedom Loans. The value could have been as high as $1.69 million as that would be the value of the property if Financial Freedom Loans loaned 65% of the value of the property. Financial Freedom Loans states that they will loan up to 65 % of the value of the property. The value of the property would have been even higher if Financial Freedom Loans loan to value ratio was less than 65%. Thus, the consideration he received, $ 0, was not reasonably equivalent to the value of the asset transferred.

34.     The Judgment-Debtor, Saad, was insolvent at the time the transfer was made or became insolvent as a result of the transfer.

35.     The transfer occurred shortly after the Judgment-Creditor obtained its judgment against him.

36.     Following the transfer of the beneficial interest in LT 7506, the Defendant Sadia Sindhu proceeded to execute the documents necessary to mortgage the property to Financial Freedom Loans, LLC for the amount of $1.1 million.

37.     The Defendant Sadia knew that she had received the beneficial interest in LT 7506 from her brother, without paying any consideration and at such time as her grantor, Saad, was a Judgment Debtor to the Plaintiff UCB in the above-captioned matter. Sadia knew that the property had a value at the time of the transfer in excess of the amount of consideration she received. Further, Sadia knew that following Saad's transfer of the beneficial interest in LT 7605 Saad would be insolvent and unable to pay the judgment in the above-captioned matter.

9

38.     By her actions Sadia knew of and participated in Saad's fraudulent actions in violation of the Illinois Uniform Fraudulent Transfer Act.  Further, Sadia benefitted by the transfer in that she mortgaged the property for $1.1 million.

39.     Because Sadia is the transferee of property transferred to her in violation of the Act and because Sadia had knowledge of the violation of the Act and was an insider, as that term is defined by the Act, Sadia should be required to convey the property to UCB, or, alternatively, to pay UCB the value of the property, not less than $1.69 million.

40.     Because the property has since been mortgaged and consideration received in exchange for the mortgage Sadia should be liable for the amount of the mortgage, $1.1 million.

41.     During the pendency of this action, Sadia should be enjoined from any further disposition of the property including any sale, transfer, mortgage or assignment affecting in any way the legal title or the beneficial interest in LT 7506.

42.     Because of their actions in bad faith and in violation of the Act Saad Sindhu and Sadia Sindhu should be jointly and severally liable for all court costs and reasonable attorneys' fees in obtaining relief under the Act.

**WHEREFORE,** the plaintiff, United Central Bank prays for relief as follows:

(a.)     An Order attaching the property the legal and beneficial interest in the property and in the Land Trust that holds the property;

(b.)     A Judgment for Fraudulent Transfer against Saad Sindhu and in favor of the Plaintiff, United Central Bank in the amount of the value of the property, believed to be in excess of $1.7 million;

(c.)     A Judgment for Fraudulent Transfer against Sadia Sindhu and in favor of the

Plaintiff, United Central Bank in the amount of the value of the property, believed to be in excess

of $1.7 million;

(d.)     A temporary and permanent injunction prohibiting Saad and Sadia Sindhu from

selling, transferring, assigning or mortgaging the property;

(e.)     Such other relief as the Court deems just and reasonable;

(f.)     An award of court costs and reasonable attorneys' fees against Saad and Sadia

Sindhu and in favor of the Plaintiff, United Central Bank.

## COUNT II

### ACTION AGAINST SAAD AND SADIA SINDHU
### FOR FRAUDULENT TRANSFER
### IN VIOLATION OF SECTION 6(a) OF THE ILLINOIS
### FRAUDULENT TRANSFER ACT

43.     Plaintiff realleges all paragraphs 1 through 42, above, as if pleaded here.

44.     The transfer of the beneficial interest violated Section 6(a) of the Illinois Uniform

Fraudulent Transfers Act. 740 ILCS 160/6(a). Section 6(a) provides that a transfer made by a

debtor "is fraudulent as to a creditor if the debtor made the transfer ... without receiving

reasonably equivalent value in exchange for the transfer ... and the debtor became insolvent as a

result of the transfer ...."

45.     As alleged, the Judgment-Debtor, Saad, transferred the beneficial interest in LT

7506 to his sister, Sadia, without receiving reasonably equivalent value in exchange for the

transfer and, as a result of the transfer, the Judgment-Debtor became insolvent.

**WHEREFORE,** the plaintiff, United Central Bank prays for relief as follows:

(a.)     An Order attaching the property the legal and beneficial interest in the property

and in the Land Trust that holds the property;

11

(b.)     A Judgment for Fraudulent Transfer against Saad Sindhu and in favor of the

Plaintiff, United Central Bank in the amount of the value of the property, believed to be in excess

of $1.7 million;

(c.)     A Judgment for Fraudulent Transfer against Sadia Sindhu and in favor of the

Plaintiff, United Central Bank in the amount of the value of the property, believed to be in excess

of $1.7 million:

(d.)     A temporary and permanent injunction prohibiting Saad and Sadia Sindhu from

selling, transferring, assigning or mortgaging the property;

(e.)     Such other relief as the Court deems just and reasonable;

(f.)     An award of court costs and reasonable attorneys' fees against Saad and Sadia

Sindhu and in favor of the Plaintiff, United Central Bank.

Respectfully submitted,

UNITED CENTRAL BANK,

By:  /s/ Daniel V. Kinsella
     One of the Attorneys for Judgment-
     Creditor-Plaintiff

Daniel V. Kinsella (ARDC No. 1468472)
Michael D. Lee (ARDC No. 6225432)
Schuyler, Roche & Crisham, P.C.
Two Prudential Plaza
180 North Stetson Avenue
Suite 3700
Chicago, Illinois  60601
(312) 565-2400 (Office)
(312) 565-8300 (Fax)

# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

UNITED CENTRAL BANK, as assignee )
of Mutual Bank, )
                                        )
      Plaintiff, )
                                          )
      v. )      Case No. 10 CV 2878
                                          )
SAAD SINDHU, )
                                          )
      Defendant. )

### CITATION TO DISCOVER ASSETS TO SHAUKAT SINDHU

To: **Sadia Sindhu**
      **233 East Wacker Drive, Apt. 3510**
      **Chicago, IL 60601**

**A judgment against Saad Sindhu (the "Judgment Debtor") was entered on August 25, 2010, in the amount of $4,362,230.27 (with interest continuing to accrue daily) and remains unsatisfied.**

Pursuant to Federal Rule of Civil Procedure 69(a), 735 ILCS 5/2-1402, and Illinois Supreme Court Rule 277, **YOU ARE COMMANDED** to appear at the law offices of Schuyler, Roche & Crisham, P.C., One Prudential Plaza, 130 East Randolph Street, Chicago, Illinois 60601, on November 20, 2012, at 10:00 a.m., to be examined under oath concerning any and all accounts, property, assets or income of the Judgment Debtor or in which the Judgment Debtor has any interest.

**YOU ARE COMMANDED** to produce at the examination: (i) all checking, savings, money market or other accounts, including but not limited to personal and business accounts, in which the Judgment Debtor has an interest, or has had an interest in the past ten years, including monthly statements and cancelled checks for the last five calendar years; (ii) all safety deposit boxes/vaults to which the Judgment Debtor is a signatory and/or holds keys; (iii) any trust(s) in which the Judgment Debtor has any interest; (iv) any information concerning any other property or income of the indebtedness due the Judgment Debtor; and (v) the documents and/or information requested in the attached Rider.

Please note that the examination is conditional and subject to change by Plaintiff United Central Bank based on its assessment of the completeness and status of your production of documents. On or after the date stated, the Court may compel the application of any discovered income or assets toward payment to United Central Bank.





**YOU ARE PROHIBITED** from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from execution or garnishment belonging to the Judgment Debtor or to which the Judgment Debtor may be entitled or which may be acquired by or become due to the Judgment Debtor and from paying over or otherwise disposing of any money not so exempt, which is due or becomes due to the Judgment Debtor, until further order of court or termination of the proceedings. You are not required to withhold the payment of any money beyond double the amount of the judgment.

**WARNING**: YOUR FAILURE TO APPEAR AS HEREIN DIRECTED MAY CAUSE YOU TO BE ARRESTED AND BROUGHT BEFORE THE COURT TO ANSWER TO A CHARGE OF CONTEMPT OF COURT, WHICH MAY BE PUNISHABLE BY IMPRISONMENT.

<u>**CERTIFICATE OF ATTORNEY OR NON-ATTORNEY**</u>

Under penalties as provided by law, the undersigned certifies that the above information regarding the amount of the judgment, the date of the judgment, or its revival date, the balance due thereon, the name of the Court and the number of the case is true and correct.

| | |
|---|---|
| Date | October 12, 2012 |
| Name | Michael D. Lee |
| Firm | Schuyler Roche & Crisham, P.C. |
| Address | 130 E. Randolph, Suite 3800 |
| City, State, Zip | Chicago, IL 60601 |
| Telephone | (312) 565-2400 |
| ARDC No. | 6225432 |

Attorney for United Central Bank

**ISSUED:**

**THOMAS G. BRUTON**
Michael W. Dobbins, Clerk of the District Court

**DATED:** _October 12, 2012

DAVID JOZWIAK

By:_____
Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

UNITED CENTRAL BANK, as assignee   )
of Mutual Bank,   )
   )
      Plaintiff,   )
   )
      v.   )
   )   Case No.: 10 CV 2878
SAAD SINDHU,   )
   )
      Defendant.   )

### <u>CITATION NOTICE</u>

To:      **Saad Sindhu, 32 Aburdour Court, South Barrington, IL 60010-6125**

| | |
|---|---|
| **Name and Address of Court:** | United States District Court for the Northern District of Illinois<br>219 S. Dearborn Street<br>Chicago, Illinois 60604 |
| **Name of Case:** | <u>United Central Bank, as assignee of Mutual Bank v. Saad Sindhu</u> |
| **Name of Judgment Creditor:** | United Central Bank |
| **Name of Judgment Debtor:** | Saad Sindhu |
| **Addresses of Judgment Debtor:** | 32 Aburdour Court, South Barrington, IL 60010-6125<br>6356 North Oakley Avenue, Apt. H, Chicago, IL 60659 |
| **Name and Address of Attorney for Judgment Creditor:** | Daniel V. Kinsella<br>Michael D. Lee<br>Schuyler, Roche & Crisham P.C.<br>One Prudential Plaza, Suite 3800<br>130 East Randolph Street<br>Chicago, Illinois 60601 |
| **Amount of Judgment:** | $4,362,230.27 |

**Name of Person Receiving Citation: Sadia Sindhu**

**Return Date:**             November 20, 2012

830253v1

**NOTICE:**     The court has issued a citation against the person named above. The citation directs that person/entity to appear in court to be examined for the purpose of allowing the judgment creditor to discover income and assets belonging to the judgment debtor or in which the judgment debtor has an interest. The citation was issued on the basis of a judgment against the judgment debtor in favor of the judgment creditor in the amount stated above. On or after the date stated above, the court may compel the application of any discovered income or assets toward payment on the judgment.

The amount of income or assets that may be applied toward the judgment is limited by federal and Illinois law.   THE JUDGMENT DEBTOR HAS THE RIGHT TO ASSERT STATUTORY EXEMPTIONS AGAINST CERTAIN INCOME OR ASSETS OF THE JUDGMENT DEBTOR WHICH MAY NOT BE USED TO SATISFY THE JUDGMENT IN THE AMOUNT STATED ABOVE:

(1)     Under Illinois or federal law, the exemptions of personal property owned by the debtor include the debtor's equity interest, not to exceed $4,000 in value, in any personal property as chosen by the debtor; Social Security and SSI benefits; public assistance benefits; unemployment compensation benefits; worker's compensation benefits; veteran's benefits; circuit breaker property tax relief benefits; the debtor's equity interest, not to exceed $2,400 in value, in any one motor vehicle, and the debtor's equity interest, not to exceed $1,500 in value, in any implements, professional books, or tools of the trade of the debtor.

(2)     Under Illinois law, every person is entitled to an estate in homestead, when it is owned and occupied as a residence, to the extent in value of $15,000, which homestead is exempt from judgment.

(3)     Under Illinois law, the amount of wages that may be applied toward a judgment is limited to the lesser of (i) 15% of gross weekly wages or (ii) the amount by which disposable earnings for a week exceed the total of 45 times the federal minimum hourly wage or after January 1, 2006, the Illinois minimum hourly wage, whichever is greater.

(4)     Under federal law, the amount of wages that may be applied toward a judgment is limited to the lesser of (i) 25% of disposable earnings for a week or (ii) the amount by which disposable earnings for a week exceed 30 times the federal minimum hourly wage,

(5)     Pension and retirement benefits and refunds may be claimed as exempt under Illinois law.

The judgment debtor may have other possible exemptions under the law.

THE JUDGMENT DEBTOR HAS THE RIGHT AT THE CITATION HEARING TO DECLARE EXEMPT CERTAIN INCOME OR ASSETS OR BOTH. The judgment debtor also has the right to seek a declaration at an earlier date, by notifying the clerk in writing at the Federal Courthouse, 219 S. Dearborn Street Chicago, Illinois 60604. When so notified, the Clerk of the Court will obtain a prompt hearing date from the court and will provide the necessary forms that must be prepared by the judgment debtor or the attorney for the judgment debtor and sent to the judgment creditor and the judgment creditor's attorney regarding the time and location of the hearing. This notice may be sent by regular first class mail.

## CERTIFICATION OF MAILING BY JUDGMENT CREDITOR
## OR ATTORNEY FOR JUDGMENT CREDITOR

Under penalties as provided by law, the undersigned certifies that he mailed by regular first-class mail a copy of the citation notice and this citation to defendants at the addresses shown below upon filing of the citation within three business days of service upon the Third Party Respondent.

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED CENTRAL BANK, as assignee of Mutual Bank, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 10 CV 2878 |
| SAAD SINDHU, | ) ) | |
| Defendant. | ) ) | |

## RIDER TO CITATION TO DISCOVER ASSETS

### DEFINITIONS

A.      The term "Saad" as used herein means and includes Saad Shaukat Sindhu and his aliases (Adnan Saad Virani, Adnan Virani, Adnan Viranisindhu and Fad Sindhu) and includes all his employees, agents, and representatives or other persons believed to have acted on his behalf.

B.      The term "Shaukat" as used herein means and includes Shaukat M. Sindhu and includes all his employees, agents, and representatives or other persons believed to have acted on his behalf.

C.      The term "Sadia" as used herein means and includes Sadia Sindhu and includes all her employees, agents, and representatives or other persons believed to have acted on her behalf.

D.      The term "Iqbal" as used herein means and includes Tahir Iqbal and includes all of his employees, agents, and representatives or other persons believed to have acted on his behalf.

E.      The term "Mutual Bank" as used herein means Mutual Bank, an Illinois banking corporation, and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

1

830254v1

F.     The term "Sultan Iowa" as used herein means Sultan Petroleum of Iowa, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

G.     The term "Sultan Illinois" as used herein means Sultan Petroleum of Illinois, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

H.     The term "Galena Heights" as used herein means Galena Heights, LLC and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

I.     The term "Galena Meadows" as used herein means Galena Meadows, LLC and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

J.     The term "Shazil International" as used herein means Shazil International and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

K.     The term "11th Street Rockford Inc." as used herein means 11th Street Rockford Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

L.     The term "Hillcrest & First DeKalb, Inc." as used herein means Hillcrest & First DeKalb, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

M.     The term "1740 Lincoln Dekalb, Inc." as used herein means 1740 Lincoln Dekalb, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

N.     The term "Sultan Petroleum" as used herein means Sultan Petroleum, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

O.     The term "Northeast Properties" as used herein means Northeast Ohio Properties, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

830254v1

P.     The term "Sultan Mining" as used herein means Sultan Mining Industries, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

Q.     The term "Allstate Petroleum" as used herein means Allstate Petroleum, LLC and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

R.     The term "3546 Markham, Inc." as used herein means 3546 Markham, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

S.     The term "Allstate Petro Inc." as used herein means Allstate Petro Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

T.     The term "Bismillah Group USA Inc." as used herein means Bismillah Group USA Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

U.     The term "JI 2 Corp." as used herein means JI 2 Corp. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

V.     The term "M&M Lube, Inc." as used herein means M&M Lube, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

W.     The term "M&M Quick Lube" as used herein means M&M Quick Lube and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

X.     The term "Markham Mobil" as used herein means Markham Mobil and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

Y.     The term "McQuaid Transportation, Inc." as used herein means McQuaid Transportation, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

Z.     The term "McQuaid Distribution & Marketing, Inc." as used herein means McQuaid Distribution & Marketing, Inc. and each of its corporate predecessors, successors,

3

parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

AA.     The term "McQuaids, Inc." as used herein means McQuaids, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

BB.     The term "Rescom International" as used herein means Rescom International and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it

CC.     The term "S & K Petroleum, LLC" as used herein means S & K Petroleum, LLC and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

DD.     The term "Saad Hotel Corporation" as used herein means Saad Hotel Corporation and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

EE.     The term "Shazil International" as used herein means Shazil International and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

FF.     The term "Sultan Enterprises, Inc." as used herein means Sultan Enterprises, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

GG.     The term "Sultan Ohio, L.L.C." as used herein means Sultan Ohio, L.L.C. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

HH.     The term "Sultan Petro" as used herein means Sultan Petro and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

II.     The term "US Hotel Corporation" as used herein means US Hotel Corporation and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

JJ.     The term "Wil Marathon" as used herein means Wil Marathon and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

4

KK.     The term "Helix Precision, Inc." as used herein means Helix Precision, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

LL.     The term "Harvard Business Help, Inc." as used herein means Harvard Business Help, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

MM.     The term "786 ASI Properties, Inc." as used herein means 786 ASI Properties Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

NN.     The term "GMS USA, Inc." as used herein means GMS ASI, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

OO.     The term "Saad Hotel, Inc." as used herein means Saad Hotel, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

PP.     The term "Northeast Ohio Properties, Inc." as used herein means Northeast Ohio Properties, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

QQ.     The term "Warren Petro, Inc." as used herein means Warren Petro, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

RR.     The term "Ellsworth Petro, Inc." as used herein means Ellsworth Petro, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

SS.     The term "SFS Properties, Inc." as used herein means SFS Properties, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

TT.     The term "Noor Petroleum Inc." as used herein means Noor Petroleum Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

UU.     The term "Noor Holdings Inc." as used herein means Noor Holdings Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

5

830254v1

VV.     The term "Girard Petro Inc." as used herein means Girard Petro Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

WW.     The term "All State Petroleum LLC" as used herein means All State Petroleum LLC and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

XX.     The term "1740 Lincoln Dekalb Inc." as used herein means 1740 Lincoln Dekalb Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

YY.     The term "Sultan Petroleum of Illinois, Inc." as used herein means Sultan Petroleum of Illinois, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

ZZ.     The term "11th Street Petroleum Rockford Inc." as used herein means 11th Street Petroleum Rockford Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

AAA.     The term "Hillcrest & First DeKalb Inc." as used herein means Hillcrest & First DeKalb Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

BBB.     The term "Euro American Realty Investors, Inc." as used herein means Euro American Realty Investors, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

CCC.     The term "Noor Petroleum Inc. as used herein means Noor Petroleum Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

DDD.     "Document" is defined in the broadest possible sense and shall mean all written, printed, electronic, typed, transcribed, punched, filmed, photographed, taped or other graphic matter or electronic data of every kind and description whatsoever, however produced or reproduced, from which information can be obtained, within your possession or subject to your control or right of control, and shall include all drafts and non-identical copies of documents, including without limitation, any paper, electronic mail, electronic file, data file, computer file, PDA file, book, account, photograph, negative, blueprint, drawing, sketch, schematic, agreement, contract, memorandum, press release, circular, advertising material,

correspondence, letter, telegram, telex, email, object, report, opinion, investigation, record, audio tape, video tape, recorded data, transcript, hearing, meeting, study, note, notation, working paper, summary, intra-office communication, diary, chart, minute, index sheet, computer software, check, check stub, delivery ticket, bill of lading, invoice, record or recording or summary of any telephone or other conversation, or of any interview or of any conference.

EEE. The phrase "electronically stored information" shall mean any type of information contained in electronic format that is stored, maintained, saved, utilized or memorialized in electronic devices, including, but not limited to, computers, blackberrys®, personal digital accessories, palm trios, cellular phones, smartphones, optical disks, CD's, DVD's, zip drives, and memory sticks.

FFF. "Communication" and "Communications" shall have the broadest possible meaning and shall include, without limitation, any oral, written or electronic transmission or exchange of information of any kind, in any form and by any means, or request for information made from one person to another person (in the form of facts, ideas, inquiries, opinions, beliefs or otherwise), by any written, oral, electronic or other means, including without limitation discussions, conversations, telephone calls, electronic mail messages, memoranda, letters, telecopies, telefaxes, telexes, messages, notes, videotapes, and/or photographs.

GGG. "Concerning" means constituting, commemorating, summarizing, evidencing, demonstrating, reflecting, referring to, relating to, containing, studying, analyzing, considering, explaining, mentioning, showing, embodying, discussing, describing, depicting, illustrating, recording, commenting upon, or resulting from.

HHH. The use of the singular form of any word shall be deemed to include the plural and vice versa. Words in the masculine, feminine or neuter shall include each of the other genders. The terms "all" and "each" shall be construed as "all and each." The terms "and" and "or" shall be construed conjunctively and disjunctively to mean "and/or." The above definitions are intended to make the Document Requests inclusive rather than exclusive.

## INSTRUCTIONS

A. These Document Requests are continuing and, to the extent that your Responses hereto should be supplemented, enlarged, diminished, or otherwise modified by information or Documents acquired by you or any other person acting on your behalf subsequent to the filing of your initial Responses, you are requested to serve promptly thereafter supplemental Responses reflecting such changes.

B. With respect to any information and/or document(s) which may be withheld on the basis of a claim of privilege, a statement shall be provided by counsel, signed by one or more of its attorneys, setting forth as to such information:

830254v1

(1)     The nature of the privilege claimed:

(2)     The name(s) of any persons privy to the communication as to which the privilege is asserted;

(3)     The job title or position of every person named in response to (2), above;

(4)     The date of the communication;

(5)     A brief description of the nature and the general subject matter of the communication;

(6)     If the privilege claimed is the attorney-client privilege, a representation that the communication pertained to the provision of legal advice by an attorney to a client.

C.     Unless indicated otherwise in a specific Document Request, the timeframe of each Document Request is from January 1, 2001 until the present.

## DOCUMENT REQUESTS

1.     All checking, savings, money market or other accounts, including but not limited to personal and business accounts, in which Saad has an interest, or has had an interest in the past ten years, including monthly statements and cancelled checks for the last five calendar years.

2.     All checking, savings, money market or other accounts, including but not limited to personal and business accounts in which Sadia has an interest, or has had an interest in the past ten years, including monthly statements and cancelled checks for the last five calendar years.

3.     All of Sadia's federal income tax returns, including all back up documents (e.g. W-2, Form 1099, receipts, etc.) prepared and/or filed with the Internal Revenue Service for the past ten years.

4.     All safety deposit boxes/vaults to which Saad and/or Sadia is a signatory and/or holds keys.

8

5.    Any information concerning any other property owned by Saad or income due to Saad.

6.    All documents and communications concerning Shaukat.

7.    All documents and communications concerning Sultan Illinois.

8.    All documents and communications concerning Sultan Iowa.

9.    All documents and communications concerning Galena Heights.

10.    All documents and communications concerning Galena Meadows.

11.    All documents and communications concerning Shazil International.

12.    All documents and communications concerning 11th Street Rockford Inc.

13.    All documents and communications concerning Hillcrest & First DeKalb, Inc.

14.    All documents and communications concerning 1740 Lincoln Dekalb, Inc.

15.    All documents and communications concerning Sultan Petroleum.

16.    All documents and communications concerning Northeast Properties.

17.    All documents and communications concerning Sultan Mining.

18.    All documents and communications concerning Allstate Petroleum.

19.    All documents and communications concerning 3546 Markham, Inc.

20.    All documents and communications concerning Allstate Petro Inc.

21.    All documents and communications concerning Bismillah Group USA Inc.

22.    All documents and communications concerning JI 2 Corp.

23.    All documents and communications concerning M&M Lube, Inc.

24.    All documents and communications concerning M&M Quick Lube.

25.    All documents and communications concerning Markham Mobil.

9

26.     All documents and communications concerning McQuaid Transportation, Inc.

27.     All documents and communications concerning McQuaid Distribution & Marketing, Inc.

28.     All documents and communications concerning McQuaids, Inc.

29.     All documents and communications concerning Rescom International.

30.     All documents and communications concerning S & K Petroleum, LLC.

31.     All documents and communications concerning Saad Hotel Corporation.

32.     All documents and communications concerning Shazil International.

33.     All documents and communications concerning Sultan Enterprises, Inc.

34.     All documents and communications concerning Sultan Ohio, L.L.C.

35.     All documents and communications concerning Sultan Petro.

36.     All documents and communications concerning US Hotel Corporation.

37.     All documents and communications concerning Wil Marathon.

38.     All documents and communications concerning Helix Precision, Inc.

39.     All documents and communications concerning Harvard Business Help, Inc.

40.     All documents and communications concerning 786 ASI Properties, Inc.

41.     All documents and communications concerning GMS USA, Inc.

42.     All documents and communications concerning Saad Hotel, Inc.

43.     All documents and communications concerning Allstate Petro Inc.

44.     All documents and communications concerning Northeast Ohio Properties, Inc.

45.     All documents and communications concerning Warren Petro, Inc.

46. All documents and communications concerning Ellsworth Petro, Inc.

47. All documents and communications concerning SFS Properties, Inc.

48. All documents and communications concerning Noor Petroleum Inc.

49. All documents and communications concerning Noor Holdings Inc.

50. All documents and communications concerning Girard Petro Inc.

51. All documents and communications concerning All State Petroleum LLC.

52. All documents and communications concerning 740 Lincoln DeKalb Inc.

53. All documents and communications concerning 11th Street Petroleum Rockford Inc.

54. All documents and communications concerning Hillcrest & DeKalb Inc.

55. All documents and communications concerning Euro American Realty Investors, Inc.

56. All documents and communications concerning Noor Petroleum Inc.

11

# Exhibit B



## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

UNITED CENTRAL BANK, as assignee )
of Mutual Bank, )
                              )
     Plaintiff, )
                              )
     v. )     Case No. 10 CV 2878
                              )
SAAD SINDHU, )
                              )
     Defendant. )

## CITATION TO DISCOVER ASSETS TO SAAD SINDHU

To:    Saad Sindhu              Saad Sindhu
       32 Aburdour Court       6356 North Oakley Avenue, Apt. H
       North Barrington, IL 60010    Chicago, IL 60659

**A judgment against Saad Sindhu (the "Judgment Debtor") was entered on August 25, 2010, in the amount of $4,362,230.27 (with interest continuing to accrue daily) and remains unsatisfied.**

Pursuant to Federal Rule of Civil Procedure 69(a), 735 ILCS 5/2-1402, and Illinois Supreme Court Rule 277, **YOU ARE COMMANDED** to appear at the law offices of Schuyler, Roche & Crisham, P.C., One Prudential Plaza, 130 East Randolph Street, Chicago, Illinois 60601, on September 25, 2012, at 10:00 a.m., to be examined under oath concerning any and all accounts, property, assets or income of the Judgment Debtor or in which the Judgment Debtor has any interest.

**YOU ARE COMMANDED** to produce at the examination: (i) all checking, savings, money market or other accounts, including but not limited to personal and business accounts, in which the Judgment Debtor has an interest, or has had an interest in the past ten years, including monthly statements and cancelled checks for the last five calendar years; (ii) all safety deposit boxes/vaults to which the Judgment Debtor is a signatory and/or holds keys; (iii) any trust(s) in which the Judgment Debtor has any interest; (iv) any information concerning any other property or income of the indebtedness due the Judgment Debtor; and (v) the documents and/or information requested in the attached Rider.

Please note that the examination is conditional and subject to change by Plaintiff United Central Bank based on its assessment of the completeness and status of your production of documents. On or after the date stated, the Court may compel the application of any discovered income or assets toward payment to United Central Bank.

827060v1



**YOU ARE PROHIBITED** from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from execution or garnishment belonging to the Judgment Debtor or to which the Judgment Debtor may be entitled or which may be acquired by or become due to the Judgment Debtor and from paying over or otherwise disposing of any money not so exempt, which is due or becomes due to the Judgment Debtor, until further order of court or termination of the proceedings. You are not required to withhold the payment of any money beyond double the amount of the judgment.

**WARNING:** YOUR FAILURE TO APPEAR AS HEREIN DIRECTED MAY CAUSE YOU TO BE ARRESTED AND BROUGHT BEFORE THE COURT TO ANSWER TO A CHARGE OF CONTEMPT OF COURT, WHICH MAY BE PUNISHABLE BY IMPRISONMENT IN THE COUNTY JAIL.

<u>CERTIFICATE OF ATTORNEY OR NON-ATTORNEY</u>

Under penalties as provided by law, the undersigned certifies that the above information regarding the amount of the judgment, the date of the judgment, or its revival date, the balance due thereon, the name of the Court and the number of the case is true and correct.

|  |  |  |
|---|---|---|
| | | /s/ Michael D. Lee |
| | | Attorney for United Central Bank |
| Date | August 27, 2012 | |
| Name | Michael D. Lee | |
| Firm | Schuyler Roche | |
| | & Crisham, P.C. | |
| Address | 130 E. Randolph, Suite 3800 | |
| City, State, Zip | Chicago, IL 60601 | |
| Telephone | (312) 565-2400 | |
| ARDC No. | 6225432 | |

AUG 27 2012

**DATED:** _____

**ISSUED:**

Michael W. Dobbins, Clerk of the District Court

By: Phelecia C. Smith
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED CENTRAL BANK, as assignee )
of Mutual Bank, )
                                 )
      Plaintiff, )
                                   )
      v. )     Case No.: 10 CV 2878
                                   )
SAAD SINDHU, )
                                   )
      Defendant. )

## CITATION NOTICE

To:        **Saad Sindhu, 32 Aburdour Court, South Barrington, IL 60010-6125**
                **Saad Sindhu, 6356 North Oakley Avenue, Apt. H, Chicago, IL 60659**

**Name and Address of Court:**    United States District Court for the Northern District of
                                        Illinois
                                        219 S. Dearborn Street
                                        Chicago, Illinois 60604

**Name of Case:**            United Central Bank, as assignee of Mutual Bank v. Saad
                                        Sindhu

**Name of Judgment Creditor:**    United Central Bank

**Name of Judgment Debtor:**    Saad Sindhu

**Addresses of Judgment Debtor:**    32 Aburdour Court, South Barrington, IL 60010-6125
                                          6356 North Oakley Avenue, Apt. H, Chicago, IL 60659

**Name and Address of Attorney**    Daniel V. Kinsella
**for Judgment Creditor:**          Michael D. Lee
                                        Schuyler, Roche & Crisham P.C.
                                        One Prudential Plaza, Suite 3800
                                        130 East Randolph Street
                                        Chicago, Illinois 60601

**Amount of Judgment:**          $4,362,230.27

**Name of Person Receiving Citation: Saad Sindhu**

**Return Date:**               September 25, 2012

827060v1

NOTICE:    The court has issued a citation against the person named above.  The citation directs that person/entity to appear in court to be examined for the purpose of allowing the judgment creditor to discover income and assets belonging to the judgment debtor or in which the judgment debtor has an interest.  The citation was issued on the basis of a judgment against the judgment debtor in favor of the judgment creditor in the amount stated above.  On or after the date stated above, the court may compel the application of any discovered income or assets toward payment on the judgment.

The amount of income or assets that may be applied toward the judgment is limited by federal and Illinois law.    THE JUDGMENT DEBTOR HAS THE RIGHT TO ASSERT STATUTORY EXEMPTIONS AGAINST CERTAIN INCOME OR ASSETS OF THE JUDGMENT DEBTOR WHICH MAY NOT BE USED TO SATISFY THE JUDGMENT IN THE AMOUNT STATED ABOVE:

(1)    Under Illinois or federal law, the exemptions of personal property owned by the debtor include the debtor's equity interest, not to exceed $4,000 in value, in any personal property as chosen by the debtor; Social Security and SSI benefits; public assistance benefits; unemployment compensation benefits; worker's compensation benefits; veteran's benefits; circuit breaker property tax relief benefits; the debtor's equity interest, not to exceed $2,400 in value, in any one motor vehicle, and the debtor's equity interest, not to exceed $1,500 in value, in any implements, professional books, or tools of the trade of the debtor.

(2)    Under Illinois law, every person is entitled to an estate in homestead, when it is owned and occupied as a residence, to the extent in value of $15,000, which homestead is exempt from judgment.

(3)    Under Illinois law, the amount of wages that may be applied toward a judgment is limited to the lesser of (i) 15% of gross weekly wages or (ii) the amount by which disposable earnings for a week exceed the total of 45 times the federal minimum hourly wage or after January 1, 2006, the Illinois minimum hourly wage, whichever is greater.

(4)    Under federal law, the amount of wages that may be applied toward a judgment is limited to the lesser of (i) 25% of disposable earnings for a week or (ii) the amount by which disposable earnings for a week exceed 30 times the federal minimum hourly wage,

(5)    Pension and retirement benefits and refunds may be claimed as exempt under Illinois law.

The judgment debtor may have other possible exemptions under the law.

THE JUDGMENT DEBTOR HAS THE RIGHT AT THE CITATION HEARING TO DECLARE EXEMPT CERTAIN INCOME OR ASSETS OR BOTH.  The judgment debtor also has the right to seek a declaration at an earlier date, by notifying the clerk in writing at the Federal Courthouse, 219 S. Dearborn Street Chicago, Illinois 60604.  When so notified, the Clerk of the Court will obtain a prompt hearing date from the court and will provide the necessary forms that must be prepared by the judgment debtor or the attorney for the judgment debtor and sent to the judgment creditor and the judgment creditor's attorney regarding the time and location of the hearing. This notice may be sent by regular first class mail.

### CERTIFICATION OF MAILING BY JUDGMENT CREDITOR
### OR ATTORNEY FOR JUDGMENT CREDITOR

Under penalties as provided by law, the undersigned certifies that he mailed by regular first-class mail a copy of the citation notice and this citation to defendants at the addresses shown below upon filing of the citation within three business days of service.

/s/ Michael D. Lee

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED CENTRAL BANK, as assignee )
of Mutual Bank, )
                                        )
      Plaintiff, )
                                          )
      v. )      Case No. 10 CV 2878
                                          )
SAAD SINDHU, )
                                          )
      Defendant. )

## RIDER TO CITATION TO DISCOVER ASSETS

### DEFINITIONS

    A.     The term "Saad" as used herein means and includes Saad Shaukat Sindhu and his aliases (Adnan Saad Virani, Adnan Virani, Adnan Viranisindhu and Fad Sindhu) and includes all his employees, agents, and representatives or other persons believed to have acted on his behalf.

    B.     The term "Shaukat" as used herein means and includes Shaukat M. Sindhu and includes all his employees, agents, and representatives or other persons believed to have acted on his behalf.

    C.     The term "Iqbal" as used herein means and includes Tahir Iqbal and includes all of his employees, agents, and representatives or other persons believed to have acted on his behalf.

    D.     The term "Mutual Bank" as used herein means Mutual Bank, an Illinois banking corporation, and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

    E.     The term "Sultan Iowa" as used herein means Sultan Petroleum of Iowa, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

1

F.     The term "Sultan Illinois" as used herein means Sultan Petroleum of Illinois, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

G.     The term "Galena Heights" as used herein means Galena Heights, LLC and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

H.     The term "Galena Meadows" as used herein means Galena Meadows, LLC and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

I.     The term "Shazil International" as used herein means Shazil International and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

J.     The term "11th Street Rockford Inc." as used herein means 11th Street Rockford Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

K.     The term "Hillcrest & First DeKalb, Inc." as used herein means Hillcrest & First DeKalb, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

L.     The term "1740 Lincoln Dekalb, Inc." as used herein means 1740 Lincoln Dekalb, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

M.     The term "Sultan Petroleum" as used herein means Sultan Petroleum, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

N.     The term "Northeast Properties" as used herein means Northeast Ohio Properties, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

O.     The term "Sultan Mining" as used herein means Sultan Mining Industries, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

2

P.     The term "Allstate Petroleum" as used herein means Allstate Petroleum, LLC and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

Q.     The term "3546 Markham, Inc." as used herein means 3546 Markham, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

R.     The term "Allstate Petro Inc." as used herein means Allstate Petro Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

S.     The term "Bismillah Group USA Inc." as used herein means Bismillah Group USA Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

T.     The term "JI 2 Corp." as used herein means JI 2 Corp. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

U.     The term "M&M Lube, Inc." as used herein means M&M Lube, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

V.     The term "M&M Quick Lube" as used herein means M&M Quick Lube and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

W.     The term "Markham Mobil" as used herein means Markham Mobil and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

X.     The term "McQuaid Transportation, Inc." as used herein means McQuaid Transportation, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

Y.     The term "McQuaid Distribution & Marketing, Inc." as used herein means McQuaid Distribution & Marketing, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

3

Z.    The term "McQuaids, Inc." as used herein means McQuaids, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

AA.    The term "Rescom International" as used herein means Rescom International and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it

BB.    The term "S & K Petroleum, LLC" as used herein means S & K Petroleum, LLC and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

CC.    The term "Saad Hotel Corporation" as used herein means Saad Hotel Corporation and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

DD.    The term "Shazil International" as used herein means Shazil International and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

EE.    The term "Sultan Enterprises, Inc." as used herein means Sultan Enterprises, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

FF.    The term "Sultan Ohio, L.L.C." as used herein means Sultan Ohio, L.L.C. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

GG.    The term "Sultan Petro" as used herein means Sultan Petro and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

HH.    The term "US Hotel Corporation" as used herein means US Hotel Corporation and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

II.    The term "Wil Marathon" as used herein means Wil Marathon and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

JJ.    The term "Helix Precision, Inc." as used herein means Helix Precision, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

4

826840V1

KK.    The term "Harvard Business Help, Inc." as used herein means Harvard Business Help, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

LL.    The term "786 ASI Properties, Inc." as used herein means 786 ASI Properties Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

MM.    The term "GMS USA, Inc." as used herein means GMS ASI, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

NN.    The term "Saad Hotel, Inc." as used herein means Saad Hotel, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

OO.    The term "Northeast Ohio Properties, Inc." as used herein means Northeast Ohio Properties, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

PP.    The term "Warren Petro, Inc." as used herein means Warren Petro, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

QQ.    The term "Ellsworth Petro, Inc." as used herein means Ellsworth Petro, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

RR.    The term "SFS Properties, Inc." as used herein means SFS Properties, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

SS.    The term "Noor Petroleum Inc." as used herein means Noor Petroleum Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

TT.    The term "Noor Holdings Inc." as used herein means Noor Holdings Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

UU.    The term "Girard Petro Inc." as used herein means Girard Petro Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

826840V1

VV.    The term "All State Petroleum LLC" as used herein means All State Petroleum LLC and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

WW.    The term "1740 Lincoln Dekalb Inc." as used herein means 1740 Lincoln Dekalb Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

XX.    The term "Sultan Petroleum of Illinois, Inc." as used herein means Sultan Petroleum of Illinois, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

YY.    The term "11th Street Petroleum Rockford Inc." as used herein means 11th Street Petroleum Rockford Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

ZZ.    The term "Hillcrest & First DeKalb Inc." as used herein means Hillcrest & First DeKalb Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

AAA.    The term "Euro American Realty Investors, Inc." as used herein means Euro American Realty Investors, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

BBB.    The term "Noor Petroleum Inc. as used herein means Noor Petroleum Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

CCC.    "Document" is defined in the broadest possible sense and shall mean all written, printed, electronic, typed, transcribed, punched, filmed, photographed, taped or other graphic matter or electronic data of every kind and description whatsoever, however produced or reproduced, from which information can be obtained, within your possession or subject to your control or right of control, and shall include all drafts and non-identical copies of documents, including without limitation, any paper, electronic mail, electronic file, data file, computer file, PDA file, book, account, photograph, negative, blueprint, drawing, sketch, schematic, agreement, contract, memorandum, press release, circular, advertising material, correspondence, letter, telegram, telex, email, object, report, opinion, investigation, record, audio tape, video tape, recorded data, transcript, hearing, meeting, study, note, notation, working paper, summary, intra-office communication, diary, chart, minute, index sheet, computer software, check, check stub, delivery ticket, bill of lading, invoice, record or

6

recording or summary of any telephone or other conversation, or of any interview or of any conference.

DDD. The phrase "electronically stored information" shall mean any type of information contained in electronic format that is stored, maintained, saved, utilized or memorialized in electronic devices, including, but not limited to, computers, blackberrys®, personal digital accessories, palm trios, cellular phones, smartphones, optical disks, CD's, DVD's, zip drives, and memory sticks.

EEE. "Communication" and "Communications" shall have the broadest possible meaning and shall include, without limitation, any oral, written or electronic transmission or exchange of information of any kind, in any form and by any means, or request for information made from one person to another person (in the form of facts, ideas, inquiries, opinions, beliefs or otherwise), by any written, oral, electronic or other means, including without limitation discussions, conversations, telephone calls, electronic mail messages, memoranda, letters, telecopies, telefaxes, telexes, messages, notes, videotapes, and/or photographs.

FFF. "Concerning" means constituting, commemorating, summarizing, evidencing, demonstrating, reflecting, referring to, relating to, containing, studying, analyzing, considering, explaining, mentioning, showing, embodying, discussing, describing, depicting, illustrating, recording, commenting upon, or resulting from.

GGG. The use of the singular form of any word shall be deemed to include the plural and vice versa. Words in the masculine, feminine or neuter shall include each of the other genders. The terms "all" and "each" shall be construed as "all and each." The terms "and" and "or" shall be construed conjunctively and disjunctively to mean "and/or." The above definitions are intended to make the Document Requests inclusive rather than exclusive.

## INSTRUCTIONS

A. These Document Requests are continuing and, to the extent that your Responses hereto should be supplemented, enlarged, diminished, or otherwise modified by information or Documents acquired by you or any other person acting on your behalf subsequent to the filing of your initial Responses, you are requested to serve promptly thereafter supplemental Responses reflecting such changes.

B. With respect to any information and/or document(s) which may be withheld on the basis of a claim of privilege, a statement shall be provided by counsel, signed by one or more of its attorneys, setting forth as to such information:

(1) The nature of the privilege claimed;

(2) The name(s) of any persons privy to the communication as to which the privilege is asserted;

7

(3)    The job title or position of every person named in response to (2), above;

(4)    The date of the communication;

(5)    A brief description of the nature and the general subject matter of the communication;

(6)    If the privilege claimed is the attorney-client privilege, a representation that the communication pertained to the provision of legal advice by an attorney to a client.

C.    Unless indicated otherwise in a specific Document Request, the timeframe of each Document Request is from January 1, 2001 until the present.

## DOCUMENT REQUESTS

1.    All checking, savings, money market or other accounts, including but not limited to personal and business accounts, in which Saad has an interest, or has had an interest in the past ten years, including monthly statements and cancelled checks for the last five calendar years.

2.    All safety deposit boxes/vaults to which the Saad is a signatory and/or holds keys.

3.    Any information concerning any other property owned by Saad or income due to Saad.

4.    All documents and communications concerning Shaukat.

5.    All documents and communications concerning Sultan Illinois.

6.    All documents and communications concerning Sultan Iowa.

7.    All documents and communications concerning Galena Heights.

8.    All documents and communications concerning Galena Meadows.

9.    All documents and communications concerning Shazil International.

10.    All documents and communications concerning 11th Street Rockford Inc.

8

826840V1

11. All documents and communications concerning Hillcrest & First DeKalb, Inc.

12. All documents and communications concerning 1740 Lincoln Dekalb, Inc.

13. All documents and communications concerning Sultan Petroleum.

14. All documents and communications concerning Northeast Properties.

15. All documents and communications concerning Sultan Mining.

16. All documents and communications concerning Allstate Petroleum.

17. All documents and communications concerning 3546 Markham, Inc.

18. All documents and communications concerning Allstate Petro Inc.

19. All documents and communications concerning Bismillah Group USA Inc.

20. All documents and communications concerning JI 2 Corp.

21. All documents and communications concerning M&M Lube, Inc.

22. All documents and communications concerning M&M Quick Lube.

23. All documents and communications concerning Markham Mobil.

24. All documents and communications concerning McQuaid Transportation, Inc.

25. All documents and communications concerning McQuaid Distribution & Marketing, Inc.

26. All documents and communications concerning McQuaids, Inc.

27. All documents and communications concerning Rescom International.

28. All documents and communications concerning S & K Petroleum, LLC.

29. All documents and communications concerning Saad Hotel Corporation.

30. All documents and communications concerning Shazil International.

9

31. All documents and communications concerning Sultan Enterprises, Inc.

32. All documents and communications concerning Sultan Ohio, L.L.C.

33. All documents and communications concerning Sultan Petro.

34. All documents and communications concerning US Hotel Corporation.

35. All documents and communications concerning Wil Marathon.

36. All documents and communications concerning Helix Precision, Inc.

37. All documents and communications concerning Harvard Business Help, Inc.

38. All documents and communications concerning 786 ASI Properties, Inc.

39. All documents and communications concerning GMS USA, Inc.

40. All documents and communications concerning Saad Hotel, Inc.

41. All documents and communications concerning Allstate Petro Inc.

42. All documents and communications concerning Northeast Ohio Properties, Inc.

43. All documents and communications concerning Warren Petro, Inc.

44. All documents and communications concerning Ellsworth Petro, Inc.

45. All documents and communications concerning SFS Properties, Inc.

46. All documents and communications concerning Noor Petroleum Inc.

47. All documents and communications concerning Noor Holdings Inc.

48. All documents and communications concerning Girard Petro Inc.

49. All documents and communications concerning All State Petroleum LLC.

50. All documents and communications concerning 740 Lincoln DeKalb Inc.

51. All documents and communications concerning 11th Street Petroleum Rockford Inc.

826840V1

52.   All documents and communications concerning Hillcrest & DeKalb Inc.

53.   All documents and communications concerning Euro American Realty Investors, Inc.

54.   All documents and communications concerning Noor Petroleum Inc.

11

Exhibit C

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

UNITED CENTRAL BANK, as assignee )
of Mutual Bank, )
                                        )
      Plaintiff, )
                                        )
      v. )     Case No.: 10 CV 2878
                                          )
SAAD SINDHU )
                                        )
      Defendant. )

### CITATION TO DISCOVER ASSETS TO A THIRD PARTY

To:   **Devon Bank**
       **6445 North Western Avenue**
       **Chicago, Illinois 60645-5494**

**A judgment against Saad Sindhu ("Judgment Debtor") was entered on August 25, 2010. Judgment was entered against Saad Sindhu in the amount of $4,362,230.27 (with interest continuing to accrue daily) and remains completely unsatisfied.**

Pursuant to Federal Rule of Civil Procedure 69(a), 735 ILCS 5/2-1402, and Illinois Supreme Court Rule 277, **YOU ARE COMMANDED** to appear in courtroom 2525 in the Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604, on April 27, 2011, at ~~10:00~~ a.m., to be examined under oath concerning any and all accounts, property, assets or income of the Judgment Debtor or in which the Judgment Debtor have any interest.

**YOU ARE COMMANDED** to produce on April 20, 2011, the following documents:
         SEE ATTACHED EXHIBIT A

Please note that the examination is conditional and subject to change by Plaintiff United Central Bank based on its assessment of the completeness and status of your production of documents. On or after the court date stated, the Court may compel the application of any discovered income or assets toward payment to United Central Bank.

**YOU ARE PROHIBITED** from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from execution or garnishment belonging to the Judgment Debtor or to which the Judgment Debtor may be entitled or which may be acquired by or become due to the Judgment Debtor and from paying over or otherwise disposing of any money not so exempt, which is due or becomes due to the Judgment Debtor, until further order of court or termination of the proceedings. You are not required to withhold the payment of any money beyond double the amount of the judgment.



EXHIBIT
C

**WARNING**: YOUR FAILURE TO APPEAR IN COURT OR FILE YOUR ANSWER AS HEREIN DIRECTED MAY CAUSE YOU TO BE ARRESTED AND BROUGHT BEFORE THE COURT TO ANSWER TO A CHARGE OF CONTEMPT OF COURT, WHICH MAY BE PUNISHABLE BY IMPRISONMENT IN THE COUNTY JAIL.

### CERTIFICATE OF ATTORNEY OR NON-ATTORNEY

Under penalties as provided by law pursuant to 735 ILCS 5/1-109, the undersigned certifies that the above information regarding the amount of the judgment, the date of the judgment, or its revival date, the balance due thereon, the name of the Court and the number of the case is true and correct.

| | |
|---|---|
| Date | March 30, 2011 |
| Name | Michael T. Roche, Esq. |
| Firm | Schuyler Roche & Crisham, P.C. |
| Address | 130 E. Randolph, Suite 3800 |
| City, State, Zip | Chicago, IL 60601 |
| Telephone | (312) 565-2400 |
| Atty. No. | 6278337 |

/s/ Michael P. Roche
Attorney for United Central Bank

**DATED:** MAR 3 0 2011

**ISSUED:**

Michael W. Dobbins, Clerk of the District Court

By: _____
Deputy Clerk

## EXHIBIT A TO SUBPOENA DUCES TECUM – DOCUMENT REQUEST

### DEFINITIONS

    A.    "Document" is defined in the broadest possible sense and shall mean all written, printed, electronic, typed, transcribed, punched, filmed, photographed, taped or other graphic matter or electronic data of every kind and description whatsoever, however produced or reproduced, from which information can be obtained, within Defendant's possession or subject to Defendant's control or right of control, and shall include all drafts and non-identical copies of documents, including without limitation, any paper, electronic mail, electronic file, data file, computer file, PDA file, book, account, photograph, negative, blueprint, drawing, sketch, schematic, agreement, contract, memorandum, press release, circular, advertising material, correspondence, letter, telegram, telex, email, object, report, opinion, investigation, record, audio tape, video tape, recorded data, transcript, hearing, meeting, study, note, notation, working paper, summary, intra-office communication, diary, chart, minute, index sheet, computer software, check, check stub, delivery ticket, bill of lading, invoice, record or recording or summary of any telephone or other conversation, or of any interview or of any conference.

    B.    The terms "You" or "Your" as used herein means and includes Devon Bank and includes all its employees, agents, and representatives or other persons believed to have acted on its behalf.

    C.    The term "Saad" as used herein means and includes Saad Shaukat Sindhu and includes all his employees, agents, and representatives or other persons believed to have acted on his behalf.

    D.    The term "Shaukat" as used herein means and includes Shaukat M. Sindhu and includes all his employees, agents, and representatives or other persons believed to have acted on his behalf.

    E.    The term "Mutual Bank" as used herein means Mutual Bank, an Illinois banking corporation, and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

    F.    The term "Sultan Iowa" as used herein means Sultan Petroleum of Iowa, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

    G.    The term "Sultan Illinois" as used herein means Sultan Petroleum of Illinois, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

    H.    The term "Galena Heights" as used herein means Galena Heights, LLC and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

I.     The term "Galena Meadows" as used herein means Galena Meadows, LLC and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

J.     The term "Shazil International" as used herein means Shazil International and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

K.     The term "11th Street Rockford Inc." as used herein means 11th Street Rockford Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

L.     The term "Hillcrest & First DeKalb, Inc." as used herein means Hillcrest & First DeKalb, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

M.     The term "1740 Lincoln Dekalb, Inc." as used herein means 1740 Lincoln Dekalb, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

N.     The term "Sultan Petroleum" as used herein means Sultan Petroleum, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

O.     The term "Northeast Properties" as used herein means Northeast Ohio Properties, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

P.     The term "Sultan Mining" as used herein means Sultan Mining Industries, Inc. and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

Q.     The term "Allstate Petroleum" as used herein means Allstate Petroleum, LLC and each of its corporate predecessors, successors, parent organizations, subsidiaries, affiliates, officers, directors, employees, agents and any other person who acted on behalf of it.

R.     The phrase "electronically stored information" shall mean any type of information contained in electronic format that is stored, maintained, saved, utilized or memorialized in electronic devices, including, but not limited to, computers, blackberrys®, personal digital accessories, palm trios, cellular phones, smartphones, optical disks, CD's, DVD's, zip drives, and memory sticks.

S.     "Communication" and "Communications" shall have the broadest possible

2

meaning and shall include, without limitation, any oral, written or electronic transmission or exchange of information of any kind, in any form and by any means, or request for information made from one person to another person (in the form of facts, ideas, inquiries, opinions, beliefs or otherwise), by any written, oral, electronic or other means, including without limitation discussions, conversations, telephone calls, electronic mail messages, memoranda, letters, telecopies, telefaxes, telexes, messages, notes, videotapes, and/or photographs.

T. "Concerning" means constituting, commemorating, summarizing, evidencing, demonstrating, reflecting, referring to, relating to, containing, studying, analyzing, considering, explaining, mentioning, showing, embodying, discussing, describing, depicting, illustrating, recording, commenting upon, or resulting from.

U. The use of the singular form of any word shall be deemed to include the plural and vice versa. Words in the masculine, feminine or neuter shall include each of the other genders. The terms "all" and "each" shall be construed as "all and each." The terms "and" and "or" shall be construed conjunctively and disjunctively to mean "and/or." The above definitions are intended to make the Document Requests inclusive rather than exclusive.

## INSTRUCTIONS

A. These Document Requests are continuing and, to the extent that your Responses hereto should be supplemented, enlarged, diminished, or otherwise modified by information or Documents acquired by you or any other person acting on your behalf subsequent to the filing of your initial Responses, you are requested to serve promptly thereafter supplemental Responses reflecting such changes.

B. If your answer to a request is "none" or "unknown," write such statement as a response.

C. With respect to any information which may be withheld on the basis of a claim of privilege, a statement shall be provided by counsel, signed by one or more of its attorneys, setting forth as to such information:

      (1) The nature of the privilege claimed:

      (2) The name(s) of any persons privy to the communication as to which the privilege is asserted;

      (3) The job title or position of every person named in response to (2), above;

      (4) The date of the communication;

      (5) A brief description of the nature and the general subject matter of the communication;

      (6) If the privilege claimed is the attorney-client privilege, a representation that the communication pertained to the provision of legal advice by an attorney to a client.

D. Unless indicated otherwise in a specific Document Request, the timeframe of each Document Request is from January 1, 2001 until the present.

3

## DOCUMENT REQUESTS

1.      All documents and communications concerning Saad.

2.      All checking, savings, money market or other accounts, including but not limited to personal and business accounts, in which Saad has an interest, or has had an interest in the past ten years, including monthly statements and cancelled checks for the last five calender years.

3.      All safety deposit boxes/vaults to which the Saad is a signatory and/or holds keys

4.      Any information concerning any other property or income of the indebtedness due Saad.

5.      All documents and communications concerning Land Trust #6996.

6.      All documents and communications concerning Land Trust #7002.

7.      All documents and communications concerning Shaukat.

8.      All documents and communications concerning Sultan Illinois.

9.      All documents and communications concerning Sultan Iowa.

10.      All documents and communications concerning Galena Heights.

11.      All documents and communications concerning Galena Meadows.

12.      All documents and communications concerning Shazil International.

13.      All documents and communications concerning Land Trust #7003.

14.      All documents and communications concerning 11th Street Rockford Inc.

15.      All documents and communications concerning Hillcrest & First DeKalb, Inc.

16.      All documents and communications concerning 1740 Lincoln Dekalb, Inc.

17.      All documents and communications concerning Sultan Petroleum

18.      All documents and communications concerning Northeast Properties.

19.      All documents and communications concerning Sultan Mining.

20.      All documents and communications concerning Allstate Petroleum.

755147v1

RECEIVED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS** MAR 3 0 2011
**EASTERN DIVISION**

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED CENTRAL BANK, as assignee )
of Mutual Bank, )
)
    Plaintiff, )
)
    v. )
) Case No.: 10 CV 2878
SAAD SINDHU )
) Judge Lindberg
    Defendant. )

**CITATION NOTICE**

To:      **Saad Sindhu, 5 Tewkesbury LN, South Barrington, IL 60010-6125**

| | |
|---|---|
| **Name and Address of Court:** | United States District Court for the Northern District of Illinois<br>219 S. Dearborn Street<br>Chicago, Illinois 60604 |
| **Name of Case:** | United Central Bank, as assignee of Mutual Bank v. Saad Sindhu |
| **Name of Judgment Creditor:** | United Central Bank |
| **Name of Judgment Debtor:** | Saad Sindhu |
| **Addresses of Judgment Debtor:** | 5 Tewkesbury LN, South Barrington, IL 60010-6125 |
| **Name and Address of Attorney for Judgment Creditor:** | Daniel V. Kinsella<br>Michael T. Roche<br>Schuyler, Roche & Crisham P.C.<br>One Prudential Plaza, Suite 3800<br>130 East Randolph Street<br>Chicago, Illinois 60601 |
| **Amount of Judgment:** | $4,362,230.27. |
| **Name of Person Receiving Citation:** | **Devon Bank** |
| **Return Date:** | April 20, 2011, 10:00 a.m. for documents, April 27, 2011 for the citation hearing |

**NOTICE:**     The court has issued a citation against the person named above. The citation directs that person/entity to appear in court to be examined for the purpose of allowing the judgment creditor to discover income and assets belonging to the judgment debtor or in which the judgment debtor has an interest.  The citation was issued on the basis of a judgment against the judgment debtor in favor of the judgment creditor in the amount stated above.  On or after the date stated above, the court may compel the application of any discovered income or assets toward payment on the judgment.

The amount of income or assets that may be applied toward the judgment is limited by federal and Illinois law.   THE JUDGMENT DEBTOR HAS THE RIGHT TO ASSERT STATUTORY EXEMPTIONS AGAINST CERTAIN INCOME OR ASSETS OF THE JUDGMENT DEBTOR WHICH MAY NOT BE USED TO SATISFY THE JUDGMENT IN THE AMOUNT STATED ABOVE:

(1)     Under Illinois or federal law, the exemptions of personal property owned by the debtor include the debtor's equity interest, not to exceed $4,000 in value, in any personal property as chosen by the debtor; Social Security and SSI benefits; public assistance benefits; unemployment compensation benefits; worker's compensation benefits; veteran's benefits; circuit breaker property tax relief benefits; the debtor's equity interest, not to exceed $2,400 in value, in any one motor vehicle, and the debtor's equity interest, not to exceed $1,500 in value, in any implements, professional books, or tools of the trade of the debtor.

(2)     Under Illinois law, every person is entitled to an estate in homestead, when it is owned and occupied as a residence, to the extent in value of $15,000, which homestead is exempt from judgment.

(3)     Under Illinois law, the amount of wages that may be applied toward a judgment is limited to the lesser of (i) 15% of gross weekly wages or (ii) the amount by which disposable earnings for a week exceed the total of 45 times the federal minimum hourly wage or after January 1, 2006, the Illinois minimum hourly wage, whichever is greater.

(4)     Under federal law, the amount of wages that may be applied toward a judgment is limited to the lesser of (i) 25% of disposable earnings for a week or (ii) the amount by which disposable earnings for a week exceed 30 times the federal minimum hourly wage,

(5)     Pension and retirement benefits and refunds may be claimed as exempt under Illinois law.

The judgment debtor may have other possible exemptions under the law.

THE JUDGMENT DEBTOR HAS THE RIGHT AT THE CITATION HEARING TO DECLARE EXEMPT CERTAIN INCOME OR ASSETS OR BOTH.  The judgment debtor also has the right to seek a declaration at an earlier date, by notifying the clerk in writing at the Federal Courthouse, 219 S. Dearborn Street Chicago, Illinois 60604.  When so notified, the Clerk of the Court will obtain a prompt hearing date from the court and will provide the necessary forms that must be prepared by the judgment debtor or the attorney for the judgment debtor and sent to the judgment creditor and the judgment creditor's attorney regarding the time and location of the hearing.  This notice may be sent by regular first class mail.

## CERTIFICATION OF MAILING BY JUDGMENT CREDITOR
## OR ATTORNEY FOR JUDGMENT CREDITOR

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure (735 ILCS 5/109), the undersigned certifies that he mailed by regular first-class mail a copy of the citation notice and this citation to defendants at the addresses shown below upon filing of the citation within three business days of service if served upon Third Party Respondent.



_____
/s/ Michael T. Roche

755211_1.DOCX

# Exhibit D

This TRUST AGREEMENT, dated **April 28, 2005** and known as **Trust Number 7056** is to certify that DEVON BANK, an Illinois Corporation, (hereinafter referred to as Trustee), have Trust powers, as Trustee hereunder, is about to receive an interest in the following described real estate in LAKE County, Illinois.

**PARCEL 1: THE NORTH 300.26 FEET OF LOT 12 IN GRAND VIEW ESTATES, A SUBDIVISION OF PART OF THE EAST ½ OF SECTION 11 AND PART OF THE WEST ½ OF SECTION 12, TOWNSHIP 43 NORTH, RANGE 9, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED JUNE 21, 1951 AS DOCUMENT 730727, IN LAKE COUNTY, ILLINOIS.**

**PARCEL 2: LOT 12 (EXCEPT THE NORTH 300.26 FEET THEREOF) IN GRAND VIEW ESTATES, A SUBDIVISION OF PART OF THE EAST ½ OF SECTION 11 AND PART OF THE WEST ½ OF SECTION 12, TOWNSHIP 43 NORTH, RANGE 9, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED JUNE 21, 1951 AS DOCUMENT 730727, IN LAKE COUNTY, ILLINOIS.**

P.I.N#: 13-12-101-009-0000 & 13-12-101-010-0000          Property Address:  24575 N. ROUTE 59, BARRINGTON, IL

**Improved With: Residential**                     Value of Property: $600,000.00

When the Trustee has taken the interest thereto, or to any other real estate interest transferred to it as Trustee hereunder, it will hold it for the uses and purposes and upon the Trusts set forth. The following persons shall be entitled to the earnings, avails and proceeds of said real estate according to the respective interests herein set forth, to wit:

**SAAD S. SINDHU, 50%  & SHAHIDA SINDHU 50% OF THE ENTIRE BENEFICIAL INTEREST UNDER THIS TRUST AGREEMENT, WITH FULL POWER TO SELL, ASSIGN OR TRANSFER ALL OR ANY PART THEREOF.  IN THE EVENT OF THE DEATH OF THE SURVIVOR, DURING THE EXISTENCE OF THIS TRUST, ALL SUCH RIGHT, TITLE AND INTEREST NOT PREVIOUSLY SOLD, ASSIGNED OR TRANSFERRED SHALL VEST IN SADIA SINDHU 50% AND SULTAN SINDHU 50%.**

The Power of Direction referred to on the reverse side hereof shall be in:

### SAAD S. SINDHU & SHAHIDA SINDHU

The Trustee shall receive for its services in accepting this trust and taking title hereunder the sum of **$210.00** and in addition each year in advance for holding title after one year from the date hereof, an annual fee in the amount of **$170.00** as determined by the Trustee's then current rate schedule and also its regular schedule of fees for executing deeds, mortgages or other instruments, including late charges. It shall receive reasonable compensation for any special services which may be rendered by it and for taking and holding any other property which may hereafter be conveyed to it, which fees, charges and other compensation the beneficiaries jointly and severally agree to pay. If the value of the property is increased for any reason after the Trustee has accepted title thereto, the Trustee shall be entitled to a reasonable additional annual fee, in accordance with its schedule of fees for holding title to the property. At the discretion of the Trustee, the Trustee reserves the right to decline to take any action on the trust until all outstanding fees are paid in full.

The names of any beneficiary will not be disclosed to the public, unless otherwise directed in writing.

Written inquiries, legal notices and other similar matters should be forwarded to:

Saad Sindhu & Shahida Sindhu  100 North Elmhurst Road, Prospect Heights, IL  60070

Bills shall be mailed to      Saad Sindhu & Shahida Sindhu  100 North Elmhurst Road, Prospect Heights, IL  60070

THIS AGREEMENT IS SUBJECT TO ADDITIONAL PROVISIONS SET FORTH ON THE REVERSE SIDE HEREOF AND WHICH ARE INCORPORATED HEREIN AND MADE A PART OF BY REFERENCE.

IN TESTIMONY WHEREOF, DEVON BANK has caused these presents to be signed by its Authorized Officer and attested by its Authorized Officer and has caused its corporate seal to be attached as and for the act and deed of said corporation, the day and above written.

# DEVON BANK

By _____Christina Simdeoslei_____
                                      Its Authorized Officer

Attest: _____Bradford A Dealwid_____
                                      Its Authorized Officer

And on said day the said beneficiaries have signed this Trust Agreement in order to signify their assent to the terms hereof.

X _____Saad Sindhu_____
SAAD S. SINDHU

X _____Shahida Sindhu_____
SHAHIDA SINDHU

Address  100 North Elmhurst Road, Prospect Heights, IL  60070
Home Phone: (847)-342-1200

Address  100 North Elmhurst Road, Prospect Heights, IL  60070
Home Phone: (847)-342-1200

UCBSINDHU_DEVONBANK_SUB09062013_391068



EXHIBIT

O

**BENEFICIARY'S INTEREST**

IT IS UNDERSTOOD AND AGREED between the parties and by any person or persons who may become entitled to any interest under this trust, that the interest of a beneficiary hereunder shall consist solely of a power of direction to deal with the title to said property and to manage and control said property as hereinafter provided, and the right to receive the proceeds from rentals and from mortgages, sales or other dispositions of said premises, and that such right in the avails of said property shall be deemed to be personal property, and may be assigned and transferred as such; that in case of the death of any beneficiary hereunder during the existence of this trust, his or her right and interest hereunder shall, except as otherwise specifically provided, pass to his or her executor or administrator, and not to his or her heirs at law; and that no beneficiary now has, and if no beneficiary at any time shall have any right, title or interest in or to any portion of said real estate as such, either legal or equitable, but only an interest in the earnings, avails and proceeds as aforesaid. The death of any beneficiary shall not terminate the trust nor in any manner affect the powers of the Trustee. Notwithstanding any provision of law to the contrary, an assignment of any beneficial interest and the power of direction hereunder, or either of the foregoing, shall be null, void, ineffective and of no force and effect unless and until the original or duplicate of such assignment is expressly acknowledged and receipted in writing by the Trustee as being in satisfactory form and substance. Every assignee of beneficial interest not so acknowledged and receipted by the Trustee shall be null, void, ineffective and of no force and effect as to any such assignee or subsequent purchaser without the necessity of any notification from Trustee.

The trust agreement can be amended in writing which must be delivered to and accepted by the Trustee. Any beneficiary having a vested interest shall at any time or time have the right to revoke, alter or amend the provision of the trust agreement relative to the person or persons who may be entitled from time to time to the ownership and enjoyment of said beneficiary's interest.

**POWER OF DIRECTION**

It is understood and agreed by the parties and by any person who may hereafter become a party, that said Trustee will deal with said real estate and with any cash or other property or assets of any kind which may come into possession or control of the Trustee only when authorized to do so in writing and that it will act (notwithstanding any change in the beneficiary or beneficiaries hereunder, unless otherwise directed in writing by all the beneficiaries) on the written direction of the party or parties designated on the reverse side or on the written direction of such person or persons as may be beneficiary or beneficiaries at that time, make deeds for, including deeds conveying title directly to a trust grantee, otherwise deal with the title to said real estate, provided that, if any person now or hereafter expressly named as the person (or as one of the persons) having such power of written direction shall be a beneficiary and shall have assigned his or her beneficial interest herein, then no written direction of any such person given subsequent to the date of such assignment with the Trustee shall be recognized without the consent of his or her assignee; provided, however, that the Trustee shall not be required to enter into any person obligation or liability in dealing with said land, or to make itself liable for any damages, costs, expenses, fines or penalties, or to deal with the title so long as any money is due to it. The Trustee shall not be required to inquire into the propriety of any such direction. Mortgages or trust deeds made and executed by the Trustee may include waiver of any and rights of redemption from sale under any order or decree of foreclosure of such mortgage or trust deed. The beneficiaries by written instrument delivered to the Trustee may revoke the foregoing power of direction and designate the persons thereafter to exercise the power. Such instrument shall be signed by all the beneficiaries. The Trustee shall not be deemed a guarantor of any signature of any beneficiary and the trust shall have no duty to ascertain the genuineness of any signature other than through the exercise of reasonable care based upon land trust industry standards.

**BENEFICIARY'S RESPONSIBILITIES**

The beneficiary or beneficiaries in his or her or their own right, shall have the management of said property and control of the selling, renting and handling thereof, and any beneficiary or his or her agent shall collect and handle the rents, earnings, avails and proceeds, and said Trustee shall have no duty in respect to the management or control of said property or in respect to the payment of taxes or assessments or in respect to insurance, litigation or otherwise, except on written direction as hereinabove provided, and all payment to it of all money necessary to carry out said instructions. No beneficiary hereunder shall have any authority to contract for or in the name of the Trustee or to bind the Trustee personally.

Nothing contained in this agreement shall be construed as imposing any obligation on the Trustee to file any income, profit or other tax reports or schedules, it being expressly understood that the beneficiaries from time to time will individually make all such reports, and pay any and all taxes, required with respect to the earnings, avails and proceeds of said real estate or growing out of their interest under this Trust Agreement.

**RELIANCE BY TRUSTEE**

The trustee shall be entitled to rely upon any writing, telegram, telefax or telex or teletype message, resolution, notice, consent, waiver, certificate, letter cablegram, statement, order, request or other document or conversation by telephone or otherwise reasonable believed by it to be genuine and correct and to have been signed, sent or made by the proper person or persons. The Trustee shall be fully justified in failing or refusing to take any action with respect to any conflicting demands or claims which the Trustee may become aware of regarding the rights of any of the parties or of any money, property, or instruments deposited or affected unless it shall first be indemnified to its satisfaction by the beneficiaries against any and all liability and expense which may be incurred by it by reason of taking or continuing to take any such action.

**LITIGATION**

In case the Trustee makes any advance of money on account of this trust or shall be made a party to any litigation on account of holding title to said real estate or in connection with this trust, or in case the Trustee shall be compelled to pay any sum of money on account of this trust, whether on account of breach of contract, violation of environmental laws, toxic or hazardous waste claims, injury to person or property, fines or penalties under any law or otherwise, the beneficiaries do hereby jointly and severally agree that they will on demand pay to the Trustee, with interest at the lesser of the annual rate of two percent (2%) above the prime rate announced by Devon Bank, or it successors (including merged or assigns, on ninety days commercial loans to its largest customers or the highest nonusurious rate allowed by law, all such disbursements or advances or payments made by the Trustee, together with its expenses, including reasonable attorney's fees, and that the Trustee shall not be called upon to convey or otherwise deal with said property at any time held until all of said disbursements, payments, advances and expenses made or incurred by the Trustee shall have been fully paid, together with interest. However, nothing herein contained shall be construed as requiring the Trustee to advance or pay out any money on account of this trust or to prosecute or defend any legal proceeding involving this trust or any property or interest unless it shall be furnished with funds sufficient to be satisfactorily indemnified.

In case of non-payment of any of said disbursements, advances, or other payments, or upon non-payment of any fees, charges and compensation of the Trustee referred herein, the Trustee shall have a first lien on the property held in Trust and on 100% of the beneficial interest and if said amount is not paid within 60 days after demand the Trustee is authorized and directed, without further notice or advertisements, to sell from time to time at public or private sale and to transfer and convey a sufficient part either of said property, or of the beneficial interest, whichever the Trustee in its sole discretion shall elect, to pay such disbursements, advances and payments and such fees, charges and compensation, and after deducting all expenses in connection with such sale, including reasonable compensation for itself and its attorneys, to pay the balance to the beneficiary or beneficiaries in proportion to their respective interests.

In the event the Trustee is served with process or notice of legal proceedings or any matter concerning this Trust Agreement or property held pursuant to this Trust Agreement the sole duty of the Trustee in connection therewith shall be to forward the process or notice by First Class Mail to the person designated as the person to whom inquiries or notices shall be sent or, in the absence of such designation, to any person having a beneficial interest. The last address appearing on the records of the Trustee shall be used for such mailing. The beneficiaries hereby agree to keep all such addresses listed herein correct. Upon service of process upon the trustee at any time, the trustee may, in its discretion disclose to the other parties to any such proceeding, the names and addresses of the beneficiary or beneficiaries.

**INDEMNIFICATION OF TRUSTEE**

Each beneficiary agrees to reimburse, indemnify and hold Devon Bank individually or as Trustee harmless in its capacity as such from and against any and all liabilities, claims, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever, including those which may be incurred on account of any laws and regulations relating to environmental protection, which may be imposed on, incurred by or asserted against Devon Bank individually or as Trustee, in any way relating to or arising out of this Trust Agreement.

**RESIGNATION**

The Trustee may at any time resign by sending by registered or certified mail a notice of its intention to do so to each beneficiary at his or her address last known to the Trustee. Such resignation shall become effective 20 days after the mailing of such notice by the Trustee. In the event of such resignation, a successor or successors may be appointed by the person or persons then entitled to direct the Trustee in the disposition of the trust property, and the Trust shall thereupon convey the trust property to such successor or successors in trust. In the event that no successor in trust is appointed as above provided within 20 days after the mailing of such notices by the Trustee, or if with said 20-day period the Trustee is not otherwise directed in the disposition of said trust property, the Trustee may convey the trust property to the then beneficiaries in accordance with their respective interests, or the Trustee may, at its option, file a bill for appropriate relief in any court of competent jurisdiction. If the Trustee shall elect to convey the trust property to the beneficiaries, the Trustee may deliver its deed of conveyance to the then owner of the beneficiary or beneficiaries last known to the Trustee and, if said deed shall not be recorded by said beneficiaries within a reasonable time after delivery thereof, the Trustee may, at its option, deliver an executed counterpart of said deed to the Recorder of Deeds or the Registrar of Titles of the county in which said real estate is located and cause said deed to be recorded or filed. The beneficiaries hereunder and each of them agree that the mailing of said deed to any beneficiary hereunder or the subsequent recording or filing of an executed counterpart thereof shall constitute delivery to and acceptance of the beneficiaries. The Trustee, notwithstanding such resignation and conveyance, shall continue to have a first lien on the trust property for its reasonable compensation and for its cost and expenses, including, but not limited to, attorney's fees, indemnification expenses and reimbursement expenses.

**OTHER PROVISIONS**

This trust agreement shall not be recorded in the county in which the land is situated, or elsewhere. The recording of the same, however, shall not be considered as notice of the rights of any person hereunder, derogatory to the title or powers of the Trustee.

The Trustee shall not be required to execute any instrument containing covenants of warranty, nor shall it be required to execute any document it is not required to do so by statute.

If any property remains in this trust twenty years from this date, or any extension thereof, it shall be sold at public sale by the Trustee on reasonable notice, and the proceeds of the sale shall be divided among those who are entitled under this trust agreement in the proportions in which they are then entitled.

It shall not be the duty of the purchaser of said premises or any part thereof to see the application of the purchase money therefor, nor shall any one who may deal with the Trustee be required or privileged to inquire into the necessity or expediency of any act of said Trustee, or of provisions of this instrument.

Any successor Trustee appointed shall become fully vested with all the estate, properties, rights, powers, trusts, duties and obligations of its, his or their predecessor.

TST105/7-95



# Exhibit E

1

<pre>
 1            IN THE UNITED STATES DISTRICT COURT
 2          FOR THE NORTHERN DISTRICT OF ILLINOIS
                      EASTERN DIVISION
 3

 4    UNITED CENTRAL BANK, as      )
      assignee of Mutual Bank,     )
 5                                 )
              Plaintiff,           )
 6                                 )
              vs.                  )  No. 10 CV 2878
 7                                 )
      SAAD SINDHU,                 )
 8                                 )
              Defendant.           )
 9

10

11

12            The deposition of SAAD SINDHU, called by

13    the Plaintiff for examination, taken pursuant to

14    notice and pursuant to the Federal Rules of

15    Civil Procedure for the United States District

16    Courts pertaining to the taking of depositions,

17    taken before Donna T. Wadlington, a Certified

18    Shorthand Reporter, at 130 East Randolph Street,

19    Suite 3800, Chicago, Illinois, on the 14th day

20    of November, 2012, commencing at approximately

21    the hour of 10:15 a.m.

22

23

24
</pre>



EXHIBIT
E

1   request?

2        A.   No.

3        Q.   I'm sorry.  Your answer was?

4        A.   No.

5        Q.   Do you know whether you've provided

6   checking and savings accounts or other bank

7   accounts for your personal or businesses?

8        A.   I have none of these records, sir.

9        Q.   I'm sorry, what?

10       A.   I have no records.  I have none of

11  these records.  I don't have bank accounts for

12  the last couple years.

13       Q.   You don't have to read it out loud.

14  Just read paragraph 1.

15            Have you read paragraph 1?

16       A.   Yes, sir.

17       Q.   How many calendar years did we request

18  your bank records for?

19       A.   Ten years.

20       Q.   In paragraph 1.  Okay.

21       A.   Ten years.

22       Q.   You did have bank accounts prior to

23  the last couple of years?

24       A.   I did.

Exhibit F

```
 1              IN THE UNITED STATES DISTRICT COURT
 2          FOR THE NORTHERN DISTRICT OF ILLINOIS
                         EASTERN DIVISION
 3
 4   UNITED CENTRAL BANK, as        )
     assignee of Mutual Bank,       )
 5                                  )
              Plaintiff,            )
 6                                  )
              vs.                   )  No. 10 CV 2878
 7                                  )
     SAAD SINDHU,                   )
 8                                  )
              Defendant.            )
 9
10
11
12           The deposition of SAAD SINDHU, called by
13   the Plaintiff for examination, taken pursuant to
14   notice and pursuant to the Federal Rules of
15   Civil Procedure for the United States District
16   Courts pertaining to the taking of depositions,
17   taken before Donna T. Wadlington, a Certified
18   Shorthand Reporter, at 130 East Randolph Street,
19   Suite 3800, Chicago, Illinois, on the 14th day
20   of November, 2012, commencing at approximately
21   the hour of 10:15 a.m.
22
23
24
```



**EXHIBIT**
f

```
 1    head.   Probably right about a 3.0.
 2         Q.    3.0?
 3         A.    Yeah.
 4         Q.    Generally recognized as a B average.
 5         A.    Right.
 6         Q.    All right.
 7                    Now, the building at -- the
 8    house at Tewkesbury, did you or any member of
 9    your family own that?
10         A.    No, sir.
11         Q.    Did you rent it?
12         A.    Yes, sir.
13         Q.    24575 North Route 59, did you or any
14    member of your family own that?
15         A.    Yes, sir.
16         Q.    Who owned it?
17         A.    I believe it was me and my mother.
18         Q.    You and your mother?
19         A.    I believe.  Yes.
20         Q.    Did you own or rent either Bissell or
21    Shubert?
22         A.    No.   Rented.
23         Q.    You rented both?
24         A.    Rented both.
```

1        Q.    What happened to the house on North

2    Route 59?

3        A.    It was foreclosed.  It was -- I

4    believe we gave a deed in lieu to the bank.

5        Q.    What bank?

6        A.    To First Midwest Bank.

7        Q.    Okay.

8                    When did that happen?

9        A.    Possibly in the earlier part of 2010,

10    to the best of my knowledge.

11        Q.    Okay.

12                    Mr. Sindhu, do you file tax

13    returns on a regular basis?

14        A.    No.

15        Q.    Why not?

16        A.    I haven't filed tax returns in several

17    years.  Just trying to get everything in order

18    before we do.  I don't know.

19        Q.    I'm going to ask you to provide an

20    exemplar of your signature.  I'm sorry.  On the

21    line.  Do you see the line up there?

22        A.    (Witness signed the document.)

23

24

# Exhibit G

```
 1              IN THE UNITED STATES DISTRICT COURT
 2            FOR THE NORTHERN DISTRICT OF ILLINOIS
                        EASTERN DIVISION
 3

 4    UNITED CENTRAL BANK, as      )
      assignee of Mutual Bank,     )
 5                                 )
              Plaintiff,           )
 6                                 )
              vs.                  )  No. 10 CV 2878
 7                                 )
      SAAD SINDHU,                 )
 8                                 )
              Defendant.           )
 9

10

11

12            The deposition of SAAD SINDHU, called by

13    the Plaintiff for examination, taken pursuant to

14    notice and pursuant to the Federal Rules of

15    Civil Procedure for the United States District

16    Courts pertaining to the taking of depositions,

17    taken before Donna T. Wadlington, a Certified

18    Shorthand Reporter, at 130 East Randolph Street,

19    Suite 3800, Chicago, Illinois, on the 14th day

20    of November, 2012, commencing at approximately

21    the hour of 10:15 a.m.

22

23

24
```



EXHIBIT
6

```
 1        A.    Yes, sir.

 2        Q.    -- what building was that?

 3        A.    It was the six flat on Chariot Court.

 4        Q.    That's Chariot Court?

 5        A.    Yes.

 6        Q.    And what was the annual rent on that

 7   building?

 8        A.    Right around maybe 54, 55 grand.

 9   Between 50 and 55,000.

10        Q.    Annually?

11        A.    Yeah.

12        Q.    And did you come up with the market

13   value for that or did your father?

14        A.    My father came up with those numbers.

15        Q.    The home in Barrington Hills -- I'm

16   sorry.  The home in Barrington, what home was

17   that in 2010?

18        A.    The 24575 home.

19        Q.    And according to this that was upside

20   down?

21        A.    Yes.

22        Q.    Okay.  Who came up with the market

23   value for that property?

24        A.    I don't know where they came from.   In
```

# Exhibit H

### Assignment of Beneficial Interest

Chicago, Illinois **January 1, 2010**

For Value Received, I hereby sell, assign, transfer and set over unto Sadia Fatima Sindhu all my rights, powers, privileges and beneficial interests to that certain trust agreement dated 28th day of April, 2005, and known as **DEVON BANK Trust number 7056,** including all interest in the property held subject to said trust agreement and including my right to direct the trustee to deal with said property.

The real property constituting the corpus of the land trust is located in the City of Barrington, in County of Lake and the State of Illinois.

_____     1 - 1 - 10

**Saad S. Sindhu,**     100% Beneficiary SS# REDACTED     Dated:

### Acceptance of Assignee

I accept the foregoing assignment subject to all of the provisions of said trust agreement.

_____     1/1/10

Sadia Fatima Sindhu,     SS# REDACTED     Dated:
Address: 5 Tewkesbury Lane, South Barrington, IL 60070

### Consent of the Secured Party

On behalf of First Midwest Bank, Secured Leander for the above mentioned trust, I hereby consent to the assignment of beneficial Interest.

**FIRST MIDWEST BANK:**

By: _____ Dated: 1/1/2010

### Receipt of Trustee

Received a duplicate of the foregoing assignment and acceptance.

**DEVON BANK as TRUSTEE:**

By: _____ 1/3/2011

**CHRISTINA M. SIMIKOSKI
LAND TRUST OFFICER**

EXHIBIT
H

UCBSINDHU_DEVONBANK_SUB09062013_391066

### Assignment of Beneficial Interest

Chicago, Illinois **January 1, 2010**

For Value Received, I hereby sell, assign, transfer and set over unto Saad Sindhu all my rights, powers, privileges and beneficial interests to that certain trust agreement dated 28th day of April, 2005, and known as **DEVON BANK Trust number 7056,** including all interest in the property held subject to said trust agreement and including my right to direct the trustee to deal with said property.

The real property constituting the corpus of the land trust is located in the City of Barrington, in County of Lake and the State of Illinois.

_____     1 - 1 - 10

**Shahida Sindhu,**                          Dated:

### Acceptance of Assignee

I accept the foregoing assignment subject to all of the provisions of said trust agreement.

_____     01 - 01 - 2010

**Saad Sindhu,**     SS# REDACTED ,          Dated:

### Consent of the Secured Party

On behalf of First Midwest Bank, Secured Leander for the above mentioned trust, I hereby consent to the assignment of beneficial interest.

**FIRST MIDWEST BANK:**

By: _____ Dated: 1/1/2010

### Receipt of Trustee

Received a duplicate of the foregoing assignment and acceptance.

**DEVON BANK as TRUSTEE:**

By: _____ 1/3/2011

**CHRISTINA M. SIMIKOSKI**
**LAND TRUST OFFICER**

UCBSINDHU_DEVONBANK_SUB09062013_391067

# Exhibit I

Recording Requested By:
BAYVIEW LOAN SERVICING, LLC.

When Recorded Return To:
ANA PEREZ
BAYVIEW LOAN SERVICING, LLC.
4425 PONCE DE LEON BLVD.
SUITE # 400
CORAL GABLES, FL 33146



Image# 047399440001 Type: REL
Recorded: 03/22/2011 at 12:50:38 PM
Receipt#: 2011-00017090
Page 1 of 1
Fees: $39.00
IL Rental Housing Fund: $10.00
Lake County IL Recorder
Mary Ellen Vanderventer Recorder
File 6718388

### RELEASE OF MORTGAGE
BAYVIEW LOAN SERVICING, LLC. #:400016136 "Devon Bank, Int" Lake, Illinois

**FOR THE PROTECTION OF THE OWNER, THIS RELEASE SHALL BE FILED WITH THE RECORDER OR THE REGISTRAR OF TITLES IN WHOSE OFFICE THE MORTGAGE OR DEED OF TRUST WAS FILED.**

KNOW ALL MEN BY THESE PRESENTS that BAYVIEW LOAN SERVICING, LLC holder of a certain mortgage, made and executed by DEVON BANK AS TRUSTEE UNDER TRUST AGREEMENT DATED APRIL 28, 2005 AND KNOWN AS TRUST NUMBER 7056 AND NOT INDIVIDUALLY, originally to FIRST MIDWEST BANK, in the County of Lake, and the State of Illinois, Dated: 11/21/2007 Recorded: 12/17/2007 in Book/Reel/Liber: N/A Page/Folio: N/A as Instrument No.: 6282047, does hereby acknowledge that it has received full payment and satisfaction of the same, and in consideration thereof, does hereby cancel and discharge said mortgage.

Property Address: 24575 NORTH ILLINOIS 59, BARRINGTON, IL 60010

IN WITNESS WHEREOF, the undersigned, by the officer duly authorized, has duly executed the foregoing instrument

BAYVIEW LOAN SERVICING, LLC
On March 4th, 2011

By:
Jennifer Hickerson, Assistant Vice-President

STATE OF FLORIDA
COUNTY OF MIAMI-DADE

On March 4th, 2011, before me, ANA PEREZ , a Notary Public in and for MIAMI-DADE, COUNTY in the State of FLORIDA , personally appeared Jennifer Hickerson, Assistant Vice-President, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.



Notary Expires 8/18/2011

(This area for notarial seal)

Prepared By: Jennifer Hickerson, BAYVIEW LOAN SERVICING, LLC. 4425 PONCE DE LEON BLVD., SUITE 400, CORAL GABLES, FL 33146 (305) 646-4179

*JH*JMBAYV*03/04/2011 03:56:33 PM* BAYVI/BAYVI/XXXXXXXXXXXXXXXX0374*01* CLAKE* 400016136 IL61A1F_MORT_REL *JH*JMBAYV*



**EXHIBIT**

I

UCBSINDHU_DEVONBANK_SUB09062013_391124

# Exhibit J

# DEVON BANK

**6445 N. Western Ave., Chicago, IL  60645-5494**

Phone: 773-423-2516
*Fax:  773-973-0400*

## DIRECTION TO EXECUTE AND DELIVER DOCUMENTS

Date:   8-9-2013

Trust No.  7056

We hereby authorize and direct you to execute as Trustee under the above trust number, the following document(s), copies that are hereunto attached.

We hereby certify that said document(s) have been read, examined and approved by the undersigned, and that all statements contained therein are true and correct.  Describe document(s) to be executed:

1. INTEREST-ONLY PERIOD FIXED RATE NOTE – LOAN #3161
2. MORTGAGE – LOAN #3161
3. 1-4 FAMILY RIDER (Assignment of Rents) – LOAN #3161
4. PROCEEDS LETTER PAYABLE TO  (List below):

$ 950,000 (Nine Hundred Fifty Thousand Dollars only) to:
Sabir Properties Inc.
Aba # REDACTED        Account #REDACTED
Home Savings and Loan Company, Youngstown, Ohio

Balance To: Sadia Sindhu
Chase Bank Account # REDACTED

The undersigned certifies and warrants that the undersigned is/are of legal age and under no legal disabilities whatsoever. Said representation and warranty is made for the purpose of inducing you to act on the within direction.

Deliver executed document(s) to:

S. Sindhu or The Bearer of this letter of Direction

Signatures of Beneficiary:

x _____
**Sadia Fatima Sindhu**

EXHIBIT
J



# DEVON BANK

6445 North Western Avenue
Chicago, Illinois 60645-5494
773-465-2500
www.DevonBank.com

August 9, 2013

**TO WHOM IT MAY CONCERN**

Re:       **TRUST NO. 7056**

Property:    24575 S. Highway 59
                Lake Barrington, IL 60010

Gentlemen:

      Pursuant to the direction of the beneficiaries of the above captioned trust, you are hereby authorized and directed to pay the proceeds of that certain real estate transaction involving the above mentioned property subject to:

1) **$950,000.00 (Nine Hundred fifty Thousand Dollars only) to SABIR PROPERTIES INC., ABA #REDACTED, ACCOUNT #REDACTED, HOME SAVINGS AND LOAN COMPANY, YOUNGSTOWN, OHIO**
2) **Balance to SADIA SINDHU, CHASE BANK ACCOUNT #REDACTED**

Sincerely,

Devon Bank, as Trustee under Trust No. **7056**
and not individually

By:_____

Asst. Vice President & Trust Officer

UCBSINDHU_DEVONBANK_SUB09062013_391103